Complainant was a contractor for the construction of a building in the city of Clifton for L.W. Ward Company, the name of which was afterwards changed to that of Passaic Bergen Auto Sales Company, one of the defendants. The corporation for which the work was being done failed to make payments in accordance with the contract and complainant filed a mechanics' lien against the property. The filing of the lien seriously affected the credit of the corporation against which it was filed and it became evident that unless an adjustment was made and additional capital raised for it, it would not be able to continue. *Page 237 
Under these circumstances conferences were held between the complainant and the officers and directors of the sales company, as a result of which it was agreed that part of the claim of complainant should be paid in cash and unendorsed notes of the sales company given for the balance of the sum agreed on as being due. The cash was paid but most of the notes were not.
There is dispute as to just what took place at these conferences and just what agreement was arrived at. A document was prepared which was recorded as a release of the lien claim. The personal defendants had taken title to the premises in question, and later a mortgage was executed to the bank to secure advances on which the personal defendants were liable as endorsers.
The sales company did not succeed in surmounting its financial difficulties and later went into bankruptcy. Complainant now seeks to hold the officers and directors of defendant corporation personally liable for the balance due on the notes, claiming that the individual defendants induced complainant to give up its lien rights by false representations as to the financial condition of the sales company. The further ground was first advanced at the hearing, that the release of the lien claim of complainant was merely conditional; that the condition was not complied with; that the defendant disposed of the property against which the lien was filed so as to destroy its validity, and that therefore complainant could charge the defendants personally with the balance of the notes.
Complainant claims that the fraud which induced it to release its lien claim consisted of false representations as to the financial situation of defendant corporation and a concealment of the fact that the property had been conveyed to the directors. I do not consider that the complainant has satisfactorily established these claims. All the persons who were present at the conferences at which the deal was made, testified and were cross-examined at length. From this testimony emerges a picture which negatives complainant's contention. The defendant corporation was certainly known by *Page 238 
all the people at the conferences to be in a serious financial condition, whether actually insolvent or not. The filing of the lien claim threatened to bring about a total collapse and deprive the sales company of any chance to get on its feet. Under these circumstances defendants say they offered to raise sufficient cash to pay approximately one-half of the lien claim and they asked complainant to take a chance on the payment of the notes. Complainant attempted to get other and further security, asking the individual defendants, who are persons of high financial standing and repute in the community, to endorse these notes. Defendants said that this was refused and complainant itself admits that this demand was withdrawn. Defendants say they told complainant that defendant corporation did not have cash and that they explained to complainant how money was being raised and that this had involved the transfer of title to the land, and I am satisfied that their version of what was said is correct. Many of defendants' contentions are corroborated at one point or another by complainant's own witnesses, and therefore I find that the allegations of fraud are not sustained.
The testimony clearly shows that complainant at the conference at which the agreement was made, fought bitterly to make the best bargain it could and finally came to an agreement which gave it the immediate payment of a substantial part of its claim and a chance to get the rest. Afterwards it proved that the corporation was not able to make good on the notes, but it is apparent to me that complainant assumed this risk.
As to the contention now raised that the lien claim was released only conditionally and should be treated by this court as against the personal defendants as though it was fully reinstated to the extent of the unpaid notes, I can find nothing in the documents or in the testimony to support it. Had it been the agreement that the lien claim was to be valid and subsisting until the notes were paid, there would have been no object in executing any release at all, and I am not impressed by the testimony that such was the intention of the parties. Complainant cites the language of Exhibit *Page 239 C-5, but I fail to find any support for its contention in this document, which says that the notes are to be "in satisfaction and discharge of the indebtedness in said lien claim mentioned, provided said notes are paid." The satisfaction and discharge which are made conditional are not expressed to be of the lien claim but of the indebtedness. The very purpose of the agreement of settlement was to dispose of the lien claim which had so seriously impaired the credit of the defendant corporation and threatened to wreck it. With the lien claim out of the way there was a possibility that the enterprise could be saved and I am convinced that the agreement actually intended to release the lien claim. A decree will be advised dismissing the bill of complaint.